IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JEFFREY RAY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 4:11-CV-00091 |
| | § | |
| WELLS FARGO BANK, N.A., | § | JURY |
| | § | |
| Defendant. | § | |

**WELLS FARGO BANK, N.A.'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and E.D. Local Rule CV-56(a), Defendant Wells Fargo Bank, N.A. ("Wells Fargo") files this Motion for Summary Judgment and Brief in Support regarding Plaintiff Jeffrey Ray's ("Plaintiff") claims.

## I. INTRODUCTION AND STATEMENT OF ISSUES

Plaintiff filed this lawsuit claiming that Wells Fargo submitted negative credit reports regarding an invalidated home equity loan. *See* Pl.'s Compl. (the "Complaint") ¶¶ 10-15, 30-33, 35-45. Plaintiff asserts a claim under the Fair Credit Reporting Act ("FCRA") as well as a claim for defamation pursuant to Texas Civil Practice and Remedies Code § 73.0001. Wells Fargo moves for summary judgment on the grounds that there are no material facts that support Plaintiff's claims.

## II. GROUNDS FOR SUMMARY JUDGMENT

Plaintiff's FCRA claim, which is premised on Wells Fargo's credit reporting, fails because Plaintiff has not shown – and the evidence negates – that Wells Fargo had a duty under the FCRA, violated the FCRA, or caused Plaintiff actual harm. Plaintiff's defamation claim fails

because it is preempted by the FCRA since there is no evidence that Wells Fargo acted maliciously or willfully, and because Plaintiff is otherwise unable to present any evidence which establishes a defamation claim. The evidence also rebuts the presumption that Plaintiff was injured by the alleged defamation.

### III.     SUMMARY JUDGMENT EVIDENCE

In support of its Motion, Wells Fargo submits the following evidence.

**Exhibit A**     The Declaration of Bryan Drummond ("Drummond Decl." or Exhibit A) is attached hereto and incorporated herein by reference.

**Exhibit B**     The Declaration of John Ulzheimer ("Ulzheimer Decl." or Exhibit B) is attached and incorporates and authenticates the following exhibit:

    **Exhibit 1**     The expert report of John Ulzheimer (the "Ulzheimer Report" or Exhibit B1) which is attached hereto and incorporated herein by reference as if fully set forth herein.

**Exhibit C**     Correspondence to Plaintiff from Citibank dated August 19, 2010, produced by Plaintiff on November 21, 2011;

**Exhibit D**     Correspondence to Plaintiff from Allstate dated January 24, 2011, produced by Plaintiff on November 21, 2011; and

**Exhibit E**     Excerpts from the Transcript of the Deposition of Plaintiff Jeffrey Ray on March 5, 2012 (the "Pl.'s Dep." or Exhibit E).

## IV. STATEMENT OF FACTS

Plaintiff and his wife, Maria M. Ray, obtained a home equity loan (the "Loan"), which was secured by a lien (the "Lien") on the property located at 8437 Biggs Road, Princeton, Texas 75407 (the "Property"). *See* Pl.'s Compl. ¶¶ 10-11.[1] Subsequent to a state court judgment determining the Lien to be invalid, Wells Fargo filed a release of the Lien on August 5, 2010. Drummond Decl. ¶ 4.[2] Despite these facts, Plaintiff claims that TransUnion LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions ("Experian"), and CSC Credit Services ("CSC") (collectively, the "Credit Bureaus") continued to show the Lien as having a balance and past due. *See* Pl.'s Compl. ¶ 15. Plaintiff sent letters to TransUnion, Equifax, and Experian on or about August 16, 2010, to dispute the accuracy of Wells Fargo's credit reporting. Pl.'s Compl. ¶ 16.

Plaintiff cites two specific examples of alleged injuries suffered because of credit reporting by Wells Fargo. First, on August 19, 2010, Citibank denied Plaintiff's application for a Platinum Select MasterCard because his Equifax credit report contained "a derogatory public record or collection" and delinquent accounts (the "Citibank Denial"). **Ex. C**. Notably, the Equifax credit report showed that Plaintiff's Medical Edge account was sent to collections. Pl.'s Dep. at 17: 10-25; Ulzheimer Report at pp. 19-20 (stating that accounts in collections are "considered to be serious derogatory items and can have a significant negative impact to a consumer's credit scores."). The report also showed that Plaintiff's Wells Fargo and Primus Automotive accounts each showed one 30-day late payment, and both incidents were over five years old. Ulzheimer Report at p. 20 (stating that such old and minor delinquencies are

---

[1] For purposes of this Motion, Wells Fargo accepts as true certain allegations in the Complaint. Wells Fargo reserves its rights to challenge such allegations in the future.
[2] The Lien was found to be invalid because the Property was designated as agricultural in nature on the local tax rolls, and in Texas, home equity loans are impermissible for agricultural property.

immaterial from a FICO credit scoring perspective). Plaintiff testified that he has never spoken to anyone at Citibank to determine whether the credit reporting by Wells Fargo impacted its decision to deny his credit card application, and he further testified that he does not know whether his application would have been approved if Wells Fargo had made no negative reports. Pl.'s Dep. at 15:9-19; 18: 10-14.

Second, on January 18, 2011, Plaintiff was denied an Allstate insurance quote because his TransUnion credit report contained either a "collection within the past five years" or "a severely derogatory account within five years" (the "Allstate Denial"). **Ex. D**. Plaintiff has produced two TransUnion credit reports in this lawsuit, one from September 28, 2010 and one from April 12, 2011. Neither report contains any delinquency reported by Wells Fargo. *See* Ulzheimer Report at 21. These reports do, however, show that an unrelated account was in collections and another account was past due. *Id*. The Allstate Denial letter indicates that Allstate reviewed the credit report of Plaintiff's wife in determining whether to offer a quote, but Plaintiff testified that he does not know whether his wife's credit report contained additional negative items. Pl.'s Dep. at 21: 6-11. Plaintiff also testified that he has never spoken with Allstate about its decision not to offer him an insurance quote, and he does not know whether Allstate would have made a quote to him assuming no issues with any reporting by Wells Fargo. Pl.'s Dep. at 23: 7-21.

Wells Fargo first received notice that Plaintiff disputed the accuracy of its credit reporting on September 7, 2010. Drummond Decl. at ¶ 5. That same day, Wells Fargo conducted an investigation, reviewed the relevant information, and updated the credit reporting history on the loan from July 2006 through September 7, 2010 to report no existing delinquencies. Drummond Decl. at ¶ 5. Wells Fargo received three additional electronic notices from the Credit Bureaus on September 8, 2010, September 20, 2010 and October 14, 2010,

indicating that Plaintiff disputed the credit reporting regarding the Loan. *See id.* at ¶ 6. Wells Fargo responded to each of these notices on the same day it received them. *See id.* When it received these notices, Wells Fargo verified Plaintiff's account information and conducted an investigation regarding the account. *See id.* In response to these notices, Wells Fargo updated the credit reporting regarding the Loan to remove a thirty-day delinquency reported July 7, 2010, but did not remove a thirty-day delinquency reported November 7, 2005. *See id.* On March 17, 2011, Wells Fargo received the fourth (and last) electronic notice from the Credit Bureaus that Plaintiff disputed the credit reporting regarding the Loan. *See id.* at ¶ 7. Wells Fargo responded to the March 17, 2011 notice the same day. *See id.* In response to the March 17, 2011 notice, Wells Fargo updated the credit reporting history on the Loan to show no delinquencies from November 2006 through March 17, 2011. *See id.* Wells Fargo requested that the Credit Bureaus delete the trade line regarding the Loan on April 25, 2011. Drummond Decl. at ¶ 8.

Plaintiff filed suit claiming that Wells Fargo violated the Fair Credit Reporting Act ("FCRA"). Pl.'s Compl. at ¶ 31. Plaintiff also asserts a claim for defamation under TEX. CIV. PRAC. & REM. CODE § 73.001. *Id.* at ¶ 38. His damages are based only on the Citibank and Allstate Denials. *Id.* at ¶ 24; Pl.'s Dep. 26:23-27:3.

### V. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A dispute about a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326. The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. *Id.* (internal quotation omitted). However, if the movant has carried its burden, the nonmovant must "go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *U.S. ex rel. Farmer v. City of Houst.*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 586–87; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Dufie*, 600 F.3d at 371. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## VI.    ARGUMENTS AND AUTHORITIES

A.    **PLAINTIFF'S FCRA CLAIM FAILS AS MATTER OF LAW**

The FCRA imposes certain duties on credit furnishers like Wells Fargo. When a credit furnisher receives notice of a dispute regarding the accuracy of information, pursuant to 15 U.S.C. 1681i, it must conduct an investigation, review all relevant information, and report the results to the notifying consumer reporting agency, or—if the investigation shows that the information was inaccurate—report the results to all other consumer reporting agencies. *See* 15 U.S.C. 1681s-2(b)(A)-(D). Furthermore, if the information is incorrect, credit furnishers have an affirmative duty to correct the information:

> If an item of information disputed by a consumer is found to be inaccurate . . . for purposes of reporting to a consumer reporting agency only, [a credit furnisher shall] modify that item of information; delete that item of information; or permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(E). Plaintiff claims that Wells Fargo violated the FCRA because it "failed to conduct a proper investigation with respect to the disputed information and failed to modify or delete the [disputed] item of information." Pl.'s Compl. at ¶ 31. Plaintiff presents no evidence, beyond conclusory statements, to support this assertion, so his FCRA claim must fail as a matter of law.

> 1.    *No Duty Arose under the FRCA Regarding the CitiBank Denial and There is Otherwise No Liability Under the FCRA as to the CitiBank Denial or Allstate Denial*

The Citibank Denial occurred on August 19, 2010. Wells Fargo first received notice that Plaintiff was disputing the accuracy of his credit report on September 7, 2010. "It is clear that any liability for alleged violation of 1681s-2(b) does not arise until a consumer reporting agency reports an inaccuracy to the furnisher . . . ." *Davis v. Sallie Mae, Inc.*, Civil Action No. 3:09-CV-00821-B, 2009 WL 2525303, *3 (N.D. Tex. Aug. 18, 2009) (citing *Young v. Equifax Credit Info.*

*Serv.*, 294 F.3d 631, 639-40 (5th Cir. 2002).[3] Wells Fargo received its first notice on September 7, 2010—almost one month after the Citibank Denial. Drummond Decl. at ¶ 5. Wells Fargo, therefore, had no duty under the FCRA at the time of the Citibank Denial, and Plaintiff's FCRA claim insofar as it relates to the August 19, 2010 CitiBank Denial fails as a matter of law.

Moreover, Wells Fargo also cannot be held liable for the Allstate Denial because it complied with the FCRA. The available evidence shows that Wells Fargo conducted an investigation, updated Plaintiff's account, and reported to the Credit Bureaus each time it received notice of Plaintiff's dispute regarding the credit reporting on the Loan. Drummond Decl. ¶¶ 5, 6, 7. Furthermore, the evidence reflects that as of October 14, 2010 (and before the Allstate Denial), Wells Fargo had updated and corrected the account to remove all delinquencies from November 2006 through October 14, 2010, and further deleted its trade line regarding the Loan on April 25, 2011. *Id.* at ¶¶ 5, 6, 7, 8; Pl.'s Dep. 30:2-6. Because the available evidence shows that Wells Fargo took steps to investigate, correct and update any alleged inaccurate reporting on the Loan, it is clear that Wells Fargo complied with the requirements of 15 U.S.C. § 1681s-2(b)(A)-(E), and did not violate the FCRA. Therefore, Plaintiff's FCRA claim fails as a matter of law as no genuine issue of material fact exists as to the claim, and summary judgment in Wells Fargo's favor is warranted.

---

[3] FCRA liability does not arise until after the furnisher has been allowed thirty days, from the notice date to investigate and correct any inaccurate reporting. *See* 15 U.S.C. § 1681s-2(b)(2); *Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788, 795 (S.D. Ohio 2008) ("liability for a [FCRA] violation arises 30 days after the furnisher of information does not comply with its obligations.") (citing *Briley v. Burns Int. SAFETOHIRE.COM, Inc.*, 78 Fed. Appx. 481, 484 (6th Cir. 2003)); *Ferrarelli v. Federated Fin. Corp. of America*, No. 1:07 CV 685, 2009 WL 116972, *8 (S.D. Ohio, 2009) (holding that even when a furnisher wrongfully verified information, "no liability could attach until [the expiration of thirty days from date of notice]"); *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1135-1136 (D. Nev. 2008) ("no violation can occur until after the 30-day deadline for completing a proper reinvestigation has expired.").

2.   *Plaintiff is Not Entitled to Actual or Punitive Damages*

Plaintiff's FCRA claim also fails because Plaintiff presents no evidence that he suffered any damage. "[T]he FCRA provides a remedy for consumers who are *actually damaged* by a failure to comply with the Act's requirements." *Pettus v. TRW Consumer Credit Serv.*, 879 F. Supp. 695, 698 (W.D. Tex. 1994) (emphasis added). The FCRA has two damage provisions: 15 U.S.C. § 1681o (a)(1) (to recover actual damages) and 15 U.S.C. § 1681n (a)(1)(A) ( to recover punitive damages). A plaintiff must prove he was actually damaged by an FCRA violation to recover under either provision. S*ee also Vlasek v. Wal-Mart Stores, Inc.*, 2008 WL 2937760, *6 (S.D. Tex. 2008) (plaintiff could not "recover under section 1681o because she has not suffered actual damages" from defendant's failure to comply with the FCRA); *see also Pettus*, 879 F. Supp. at 698 (plaintiff could not recover under section 1681n because he "failed to meet his burden of coming forward with some evidence of damages resulting from the alleged inaccuracies in his credit reports"). "Each element of damage must be linked to failure to comply with FCRA obligations." *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 738 (S.D. Tex. 2006). Plaintiff seeks actual damages under 15 U.S.C. § 1681o and punitive damages under 15 U.S.C. § 1681n. Pl.'s Compl. ¶ 32. He cites to the Citibank Denial and Allstate Denial as his only evidence of damage. Pl.'s Dep. 26:23-27:3; *see also* Pl.'s Compl. ¶¶ 24.

The CitiBank Denial occurred because Plaintiff's Equifax/CSC credit report contained "a derogatory public record or collection" and delinquent accounts. **Ex. C.** The credit report showed that Plaintiff's Medical Edge account was sent to collections. Ulzheimer's Report. at p. 20. The report also showed that Plaintiff's Primus Automotive account had the same five-year-old "30 day" delinquency as his Wells Fargo account. *Id*. at p. 20. Five-year-old delinquencies are immaterial. *See id* at pp. 19-20. Therefore, the only derogatory public record or collection

on the Equifax/CSC credit report was Plaintiff's Medical Edge account. *See id.* Additionally, Plaintiff admitted in his deposition that he has never spoken with Citibank about its denial, and he does not know if his credit card application would have been approved if there were no alleged credit reporting errors by Wells Fargo. Pl.'s Dep. at 15:9-19; 18:10-14. Consequently, Plaintiff cannot link his CitiBank Denial to Wells Fargo's account.

Plaintiff also cannot link his Allstate Denial to Wells Fargo. The Allstate Denial occurred because Plaintiff's TransUnion credit report contained either an account sent to collections or a severely derogatory account. Ex. D. None of Plaintiff's TransUnion credit reports show the Wells Fargo account as delinquent, in collections, or seriously derogatory. Ulzheimer Report at pp. 21-22. The last report did not even contain Wells Fargo's trade line. *Id.* at p. 21. However, the TransUnion reports did show that some of Plaintiff's other accounts were in collections or past due. Therefore, the Allstate Denial must have been caused by those other accounts and not Wells Fargo's. Ulzheimer Report at p. 22. Moreover, Plaintiff testified that he does not know whether any credit reporting by Wells Fargo caused Allstate to refrain from offering him an insurance quote. Pl.'s Dep. at 23: 7-21.

Plaintiff presents no evidence that he was denied credit or otherwise suffered actual damages as a direct result of Wells Fargo's credit reporting. Furthermore, the Allstate Denial was only a denial of a *quote* for coverage, and not a denial of coverage, and, thus, could not have caused Plaintiff any actual harm. *See* Ulzheimer Report at p. 21. In light of the foregoing, Plaintiff is not entitled to either actual or punitive damages because he cannot show that the Denials were caused by Wells Fargo's credit reporting. *See Vlasek*, 2008 WL 2937760, at *6; *Pettus*, 879 F. Supp. at 698. Because he cannot show actual harm, Plaintiff's FCRA claims fail as a matter of law.

3. *Plaintiff is Not Entitled to Punitive Damages Because There is No Evidence of Willfulness*

Punitive damages are recoverable under 15 U.S.C. § 1681n. This section requires proof of actual damage and a willful FCRA violation. *See Pettus*, 879 F. Supp. at 697; 15 U.S.C. §1681n (a); *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993). Plaintiff is not entitled to punitive damages because Wells Fargo attempted to resolve inaccuracies and, therefore, did not act willfully.

The Fifth Circuit has a high willfulness standard and does not find that a defendant acted willfully when it attempts to resolve a credit dispute. *See Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986); *Stevenson*, 987 F.2d at 294 (5th Cir. 1993). In *Pinner*, the Fifth Circuit refused to find that defendants, who failed to correct inaccurate information, willfully violated the FCRA because they made attempts to resolve the matter. *Pinner,* 805 F.2d at 1263 (5th Cir.1986). The Court overturned the punitive damage award because "[t]here [was] no evidence that [defendants] knowingly and intentionally committed an act in conscious disregard for the rights of others." *Id*.

The Fifth Circuit also held that a defendant did not act willfully when it failed to promptly investigate and delete an inaccurate item. *See Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993). The *Stevenson* court found it persuasive that the defendant did not intend "to thwart consciously [plaintiff's] right to have inaccurate information removed promptly from his report." *Id.* Furthermore, the *Stevenson* defendant did not conceal information, but investigated the disputed item and attempted to resolve the dispute. *Id.* Like both the *Pinner* and *Stevenson* defendants, Wells Fargo investigated Plaintiff's credit report and attempted to resolve inaccuracies. Specifically, Wells Fargo resolved inaccuracies by deleting delinquencies and eventually the entire trade line. Drummond Decl. at ¶¶ 5-7. Because Wells Fargo took clear

steps to investigate and attempt to resolve the disputed credit reporting, Plaintiff cannot present evidence that Wells Fargo acted willfully by consciously disregarding or thwarting his right to an error-free credit report. Thus, Plaintiff cannot show that he is entitled to punitive damages under the FCRA.

**B.     PLAINTIFF'S DEFAMATION CLAIM FAILS**

   1.     *Plaintiff's Defamation Claim is Preempted*

Plaintiff asserts a claim for defamation, specifically libel per se, under TEX. CIV. PRAC. & REM. CODE § 73.001. The FCRA preempts state law claims unless credit furnishers provide false information with "malice or willful intent to injure [the] consumer." *Yeager v. TRW, Inc.*, 984 F. Supp. 517, 522 (E.D. Tex. 1997) (citing 15 U.S.C. § 1681h(e)).

Plaintiff claims that "Wells Fargo acted with malice because it knowingly, intentionally, and recklessly made negative reports to credit reporting agencies regarding the [Lien]." Pl.'s Compl. at ¶ 40. The evidence on record refutes Plaintiff's assertion. Plaintiff cannot show malice in regards to the Citibank Denial because Wells Fargo did not even have notice of any dispute before that denial and "malice cannot be shown where there is no evidence which would indicate that the [defendant] had notice . . . ." *Yeager*, 984 F. Supp. at 524; *see supra* pp. 6-7. Furthermore, the evidence shows that Wells Fargo worked to correct the reporting on the Loan as soon as it received notice that Plaintiff disputed its accuracy. Drummond Decl. ¶ 5. The record also shows that Wells Fargo undertook efforts to correct Plaintiff's account by deleting delinquencies and, eventually, deleting the entire trade line. *Id.* at ¶ 8; Pl.'s Dep. 30:2-6. Importantly, Fifth Circuit courts do not find malice when a party has corrected errors on a credit report. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 376 (5th Cir. 2001) (the court found no malice because the credit reporting agency corrected the report); *but see Zala v. Trans Union,*

*LLC.*, No. CIV. A. 3:99-CV-0399, 2001 WL 210693 (N.D. Tex. Jul. 17, 2001) (the court held there was evidence of malice because credit reporting agency never corrected plaintiff's credit report); *Yeager*, 984 F. Supp. at 524, 525 (the court held there was evidence of malice because defendant took no steps to correct the account after the initial investigation indicated it was inaccurate).

Considering the available evidence, there is no genuine issue of material fact regarding willful intent because it is clear that Wells Fargo did not act in conscious disregard of Plaintiff's rights to have an error-free credit report. This Court has "interpreted the term 'willful' in this context to require that a reporting agency knowingly and intentionally [commit] an act in conscious disregard for the rights of others." *Yeager*, 984 F. Supp. at 523 (internal quotations omitted). As previously stated, Plaintiff presents no evidence that Wells Fargo consciously disregarded his rights to an error-free credit report. Because Plaintiff cannot show that Wells Fargo acted with malice or willful intent, his defamation claim is preempted.

    2.    *Plaintiff has No Evidence of Libel Per Se*

Alternatively, there is no evidence to support Plaintiff's claim for libel per se. To prevail in a libel per se claim, Plaintiff must prove that there was (1) a written defamation that (2) tended to injure his reputation and (3) thereby exposed him to financial injury. *See* TEX. CIV. PRAC. & REM. CODE § 73.001. "Libel per se means the written or printed words are so obviously hurtful to the person aggrieved that they require no proof of their injurious character to make them actionable." *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.–Houston [14 Dist.] 1999, no pet.). Though courts presume injury in libel per se claims, this presumption is rebuttable. *Swate v. Schiffers*, 975 S.W.2d 70, 74 (Tex. App.-San Antonio 1998, pet. denied). The record shows that Plaintiff sustained no financial injury as a result Wells Fargo's actions. Furthermore, Plaintiff

even admits that he did not suffer a mental anguish injury. *See* Pl.'s Dep. 35:12-36:7 (Plaintiff states that he was not bothered by the alleged defamation). The evidence refutes any presumption of injury, so Plaintiff's defamation claim fails as a matter of law.

## CONCLUSION

Plaintiff's FCRA claim fails as a matter of law because Plaintiff cannot present any evidence which indicates that a genuine fact issue exists regarding his FCRA claim. The evidence shows that Wells Fargo had no FRCA duty at the time of the Citibank Denial, did not violate its FCRA obligations, and did not otherwise cause Plaintiff's credit denials. Furthermore, Plaintiff's defamation claim is preempted because Wells Fargo corrected Plaintiff's credit report and, therefore, did not act maliciously or willfully. Regardless, Plaintiff is unable to present any evidence that shows a genuine issue of material fact exists for trial as to his defamation claim. For these reasons, Wells Fargo prays that the Court enter summary judgment in its favor for each of Plaintiff's claims and grant any other relief in law or equity to which Wells Fargo may be entitled.

Respectfully submitted,

/s/ Jennifer L. Kinney
**Robert T. Mowrey**
  State Bar No. 14607500
  rmowrey@lockelord.com
**C. Don Clayton**
  State Bar No. 24027932
  dclayton@lockelord.com
**Jennifer L. Kinney**
  State Bar No. 24055779
  jkinney@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

**ATTORNEYS FOR DEFENDANT
WELLS FARGO BANK, N.A.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following *via ECF and/or electronic mail and/or facsimile and/or certified mail, return receipt requested* pursuant to the Federal Rules of Civil Procedure on this 26th day of March 2012:

　　James C. Mosser
　　Alexis K. Caughey
　　MOSSER LAW PLLC
　　17110 Dallas Parkway, Suite 290
　　Dallas, Texas 75248
　　Telephone: (972) 733-3223
　　Facsimile: (972) 267-5072

/s/ Jennifer L. Kinney
Counsel for Wells Fargo